# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
An Apple iPhone seized from Shane E. Hall's residence )
on October 20, 2022, that is currently located at the ATF )
Field Office Evidence Locker in Columbus, Ohio )

Case No.  2:23-mj-227

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of this Application, incorporated here by reference.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of this Application, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | -Distribution/possession with intent to distribute controlled substances |
| 18 U.S.C. § 924(c)(1)(A) | -Possession of a firearm in furtherance of a drug trafficking crime |
| 18 U.S.C. § 922(g)(1) | -Felon in possession of a firearm |

The application is based on these facts:

See the Affidavit in Support of this Application, incorporated here by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cole Benner*
Applicant's signature

Cole D. Benner, Special Agent (ATF)
Printed name and title

Sworn to before me and signed in my presence.

Date: April 4, 2023

*Kimberly A. Jolson*
United States Magistrate Judge

City and state: Columbus, Ohio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE iPHONE SEIZED FROM SHANE E. HALL'S RESIDENCE ON OCTOBER 20, 2022, THAT IS CURRENTLY LOCATED AT THE ATF FIELD OFFICE EVIDENCE LOCKER IN COLUMBUS, OHIO | CASE NO. 2:23-mj-227<br><br>FILED UNDER SEAL |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cole D. Benner, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state the following:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device described more fully in Attachment A (the "**SUBJECT DEVICE**")—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the ATF and have been so employed since March 2020. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and in the National Firearms Act of 1934. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

1

3. Prior to becoming a Special Agent with ATF, I attended Otterbein University, where I graduated with a bachelor's degree in History with a minor in Sociology. I was previously employed as an Officer for the Raleigh Police Department, starting in 2016. As part of my previous employment, I completed the North Carolina Basic Law Enforcement Training Academy. I also received additional training in Outlaw Motorcycle Gang Investigations. My duties with the Raleigh Police Department included answering emergency calls for service, locating and arresting fugitives, and conducting drug interdiction investigations. I was also previously employed as a Sheriff's Deputy for the Forsyth County, North Carolina, Sheriff's Office, starting in 2019. My duties as a Sheriff's Deputy included answering emergency calls for service, serving subjects with civil and criminal processes, and conducting traffic stops related to drug interdiction.

4. As a Special Agent, I have participated in many federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances. Through my participation in these investigations, I have debriefed numerous defendants and witnesses with personal knowledge regarding firearms and/or narcotics trafficking. I have also conducted physical and electronic surveillance, seized evidence and contraband, executed search warrants, and arrested defendants. As a result of my training and experience, I am familiar with federal laws surrounding the illegal possession and sale of both firearms and controlled substances.

5. This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this affidavit are based on my personal knowledge, my training and experience, my interviews of various witnesses, including law-enforcement personnel who participated in this investigation, and my review of certain records and documents.

## II. BACKGROUND ON ILLEGAL FIREARM POSSESSION

6. Federal law generally prohibits individuals who have been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm or ammunition if the individual knows they have been convicted of such an offense and the firearm or ammunition traveled in or affected interstate or foreign commerce prior to the individual's possession of the item(s). *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Federal law also prohibits any individual from possessing a firearm in furtherance of a drug trafficking crime which may be prosecuted in a court of the United States. *See* 18 U.S.C. § 924(c)(1)(A).

7. I know based on my training and experience that individuals who possess firearms and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition. Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearm brochures or owner's manuals, records of sale or acquisition of firearms, firearm magazines, and holsters.

8. I know that individuals who possess firearms and ammunition frequently utilize cell phones to take photographs and videos of themselves in possession of their firearms and ammunition. These same individuals also utilize cell phones, to include calls, texts, and social media applications, to arrange the purchase and sale of firearms, ammunition, and/or firearm-related accessories.

9. I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)).

3

### III. BACKGROUND ON CONTROLLED SUBSTANCES TRAFFICKING

10. Federal law also generally prohibits the manufacture, distribution, and dispensation of controlled substances—including methamphetamine and cocaine—and the possession with intent to do any of those activities. *See* 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)-(C).

11. I know that drug traffickers often utilize electronic equipment such as cell phones to generate and/or store information concerning their drug trafficking. More specifically, I know that drug traffickers often use voice communication services and texting applications and programs on such devices to conduct their business, including, but not limited to, transmitting information regarding price, quantity, and transportation of controlled substances.

12. Drug Trafficking Organizations ("DTOs") depend on maintaining extensive contacts between and among suppliers, couriers, customers, and others involved in the supply, transportation, distribution, sales, and marketing of controlled substances. Members of a DTO must maintain contact with one another and use expedient means of communication. To do this, continued access to telephone communication, including text and multimedia messaging, is necessary. The use of voice and text messaging communication is essential to maintaining timely contacts with suppliers and those down the organizational chain, including local traffickers. Members of DTOs must also meet to formulate plans concerning their drug trafficking and other illegal activities and to divide their illegal proceeds. Through training and experience, I know that members of a DTO often utilize their cell phones, including the push-to-talk, direct connect features, and text messaging to arrange such meetings. I also know that drug traffickers often take or cause to be taken photographs and videos of them, their associates, their property, and their product. Drug traffickers usually maintain these photographs and videos in their possession, often on their cell phones or other portable electronic devices.

### IV. IDENTIFICATION OF THE DEVICE TO BE EXAMINED

13. The property to be searched is an Apple iPhone, contained in a black case, which was recovered from the kitchen table of Shane H. Hall's residence during the execution of a federal search warrant at that location on October 20, 2022. The **SUBJECT DEVICE** is currently stored in the ATF Field Office Evidence Locker in Columbus, Ohio.

### V. PROBABLE CAUSE FOR THIS SEARCH

14. As set forth throughout this affidavit, I submit there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) [Distribution/Possession with Intent to Distribute Controlled Substances, including methamphetamine and cocaine], 18 U.S.C. § 924(c)(1)(A) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime], and 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (the "**TARGET OFFENSES**") have been committed by Shane E. Hall, Samantha J. Howard, and other individuals both known and unknown. Furthermore, I submit there is probable cause to search the **SUBJECT DEVICE** for evidence of those crimes.

15. In June 2022, I identified Shane E. Hall as a suspect warranting further investigation. A previously known and reliable ATF Confidential Informant ("CI") notified me that Hall was known to distribute large amounts of narcotics, including methamphetamine. The CI further notified me that Hall was also often in possession of firearms. Finally, the CI notified me that Hall possesses firearms and sells narcotics from his residence located at 2511 Lindsay Road, Obetz, Ohio (the "Lindsay Road Residence").

16. I conducted a query of the National Crime Information Center ("NCIC") and learned that Shane E. Hall has a prior felony conviction from roughly August 12, 2011, for "Felony Drugs: Possess W/Intent to Sell," out of Wayne County, West Virginia. Given this prior felony conviction, Hall is prohibited by federal law from possessing firearms and ammunition.

17. Between July 5, 2022, and October 14, 2022, I used a CI to make four different controlled buys of methamphetamine from Hall at his Lindsay Road Residence. During each controlled buy, Hall sold the CI over 50 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of federal law. During each controlled buy, Hall made the sale of methamphetamine from the attached garage at his Lindsay Road Residence.

18. Based on those controlled buys, I applied for and was granted a federal search warrant for the Lindsay Road Residence and any vehicles located on the property to search for evidence of drug trafficking and illegal firearm possession. (*See* Case No. 22-MJ-696).

19. On October 20, 2022, at approximately 10:00 a.m., ATF special agents and task force officers, as well as officers from the Obetz Police Department, executed that search warrant at Hall's Lindsay Road Residence. Members of the entry team first approached the residence on foot. Prior to their arrival, a task force officer alerted the entry team to the arrival of a Gray Honda Accord bearing Ohio license plate "Sammy Jo" sitting in the driveway – occupied.

20. Law enforcement personnel secured the sole occupant of the "Sammy Jo" vehicle and later identified her as Samantha J. Howard. A review of law enforcement records later showed that Howard was then (and still is) serving a term of federal supervised release following her conviction for conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in Southern District of Ohio Case No. 2:19-CR-237. Howard entered a guilty plea to that charge on October 18, 2020, and she was sentenced to one day of imprisonment minus time served on February 25, 2022.

21. Howard was asked if she would consent to a search of her vehicle, which was registered in her name, but she declined. Law enforcement personnel then informed Howard that they would search her vehicle anyway consistent with the term of the search warrant.

22. The search of Howard's vehicle revealed a pursue on the floorboard that contained 157.357 grams of methamphetamine (roughly 1/3-pound), 27.829 grams of powder cocaine (roughly an ounce), twenty Alprazolam pills, a digital scale, and drug packaging materials. While searching the vehicle, law enforcement personnel also found Howard's driver's license, bank cards, mail, prescription medication, other personal effects, and what they believe to be her cell phone, which agents seized and later transported to the ATF Field Office Evidence Locker in Columbus, Ohio, where it currently remains.

23. Meanwhile, other members of the entry team continued to the front door of the residence, where they encountered several people inside, including Shane E. Hall, his wife, their young child, and another woman who was later identified as a cousin to both Shane E. Hall and Samantha J. Howard. Law enforcement personnel removed all four individuals from the residence and temporarily detained them while conducting a search of the home. Agents later learned that Shane E. Hall and Samantha J. Howard are also cousins with one another.

24. Law enforcement personnel then searched the residence and located 428.574 grams of methamphetamine (roughly one pound), digital scales with suspected drug residue on them, and drug packaging materials inside the attached garage where Hall had previously distributed methamphetamine during the controlled buys described above. Law enforcement personnel also located three firearms inside the residence (including one in the garage), several of which were loaded at the time. While searching the home, law enforcement personnel also found what they believe to be Shane E. Hall's cell phone (the "**SUBJECT DEVICE**") sitting on a table in the kitchen. Law enforcement personnel seized the **SUBJECT DEVICE** and later transported to the ATF Field Office Evidence Locker in Columbus, Ohio, where it currently remains.

25. On December 6, 2022, the Grand Jury returned a nine-count indictment against Shane E. Hall and Samantha J. Howard in Southern District of Ohio Case No. 2:22-CR-228. That indictment charged them with various drug trafficking and firearm offenses stemming from this investigation and the search warrant execution at Hall's residence. As relevant here, Hall was charged with four counts of distributing 50 grams or more of methamphetamine (Counts 1-4); one count of possession with intent to distribute 50 grams or more of methamphetamine (Count 5); one count of possession of a firearm in furtherance of a drug trafficking crime (Count 6); and one count of being a felon in possession of a firearm (Count 7).

### VI. TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

27. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

28. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

29. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

30. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna

9

on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

31. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

32. Based on my training, experience, and research, and from consulting publicly available product technical specifications, I know that the **SUBJECT DEVICE** has the capabilities to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

33. Based on my training and experience, I also know that the **SUBJECT DEVICE** could contain audio and video recordings, ledgers, notes, and other digital information. I know based on training and experience in previous drug investigations that individuals involved in the distribution of controlled substances will often use cell phones and other electronic communication devices to maintain contact with drug associates, drug sources of supply, and drug customers. Further, drug traffickers utilize cell phones to store records, electronic receipts, notes, ledgers,

contact information, customer lists, bank statements, physical addresses, e-mail addresses, to retain and transmit photographs, text messages and e-mail messages, to access the internet (to track packages), and to communicate with other drug traffickers concerning the purchasing, transportation, sale, distribution, or possession of controlled substances. I know that drug traffickers will often take "trophy" pictures of drugs, money, firearms and other items associated with their illegal activities. I know that drug traffickers will often communicate via voice telephone calls, text messages, email, and other electronic messaging to one another to facilitate the distribution of controlled substances. I also know that persons involved in transporting controlled substances often communicate with each other via electronic devices. Additionally, I know that drug traffickers typically use multiple cell phones to communicate with their co-conspirators, compartmentalizing different members of the organization on individual phones. Additionally, drug traffickers use digital scales to weigh the narcotics sold to their customers.

## VII. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVIE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

37. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VIII. CONCLUSION

38. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B as evidence of the **TARGET OFFENSES**.

*Cole Benner*
_____
Cole D. Benner, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This affidavit was sworn to by the Affiant
by telephone after a PDF was transmitted
by email, per Fed. R. Crim. P. 3, 4(d), and 4.1 on
this __4th__ day of April, 2023.

_____
Kimberly A. Jolson
United States Magistrate Judge

13

## ATTACHMENT A

### Property to Be Searched

The **SUBJECT DEVICE** is further described as an Apple iPhone, contained in a black case, which was recovered from the kitchen table at Shane E. Hall's residence during the execution of a federal search warrant at that location on October 20, 2022. The **SUBJECT DEVICE** is currently stored in the ATF Field Office Evidence Locker in Columbus, Ohio.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored information described in Attachment B.

## ATTACHMENT B

### Items to be Seized

1. All records on the **SUBJECT DEVICE** that relate to violations of 21 U.S.C. § 841(a)(1) [Distribution/Possession with Intent to Distribute Controlled Substances]; 18 U.S.C. § 924(c)(1)(A) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime]; and 18 U.S.C. §§ 922(g)(1) and 924(a)(8) [Felon in Possession of a Firearm] that involve Shane E. Hall from June 1, 2022, until October 20, 2022, including, but not limited to, the following:

   a. Lists of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. Any information recording Shane E. Hall's schedule or travel;

   e. All bank records, checks, credit card bills, account information, and other financial records;

   f. Any photographs or video recordings depicting drugs, drug proceeds, firearms, ammunition, or other firearm parts and accessories.

2. Evidence of user attribution showing who used or owned the device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

15

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever means they may have been created or stored, including any form of computer or electronic image and any photographic form.